

ENTERED

SEP 2 4 2019

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA**

DARLENNA FRANKLIN and
CURTIS FRANKLIN, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.                                       Case No. 1:18-cv-00587

MANUFACTURERS AND
TRADERS TRUST COMPANY, d/b/a
M&T BANK,

      Defendant.

## ~~Proposed~~ Final Approval Order

Pending is Plaintiffs' Unopposed Motion for Final Approval of Settlement, Attorneys' Fees

and Costs, and Service Award.  For the reasons stated in the Plaintiffs' memorandum and for good

cause shown, the Motion is **GRANTED**.  Accordingly, the Court hereby **FINDS, ORDERS,**

**ADJUDGES, AND DECREES** as follows:

**I.      Background**

In this action, Plaintiffs, on behalf of a putative class of similarly situated individuals,

claimed that Defendant violated the West Virginia Consumer Credit and Protection Act

("WVCCPA") by assessing attorney's fees and property inspection fees against them and the class

when their mortgage loans were in default. The Court preliminarily approved the Settlement

Agreement on May 29, 2019.  That Order outlined the terms of the proposed settlement. The Court

adopts and incorporates herein those portions of that Order.

## II.    The Settlement Merits Final Approval

### A.    Notice is complete.

The Court finds that the parties have completed all settlement notice obligations imposed in the Order Preliminarily Approving Settlement.  The class notice, which included first-class mailed notice to each class member, constitutes the "the best notice practicable under the circumstances," as required by Rule 23(c)(2).

### B.    The settlement is fair, adequate, and reasonable.

Settlement of class actions must be approved by the Court.  Fed. R. Civ. P. 23(e); *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472; *Muhammad*, 2008 WL 5377783, at *3.  "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *see also Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992).  In the first stage, the Parties submit the proposed settlement to the Court for preliminary approval.  In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable

notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'"). The Court has already granted preliminary approval.

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Groves*, 2011 WL 4382708, at *4. A class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Bicking*, 2011 WL 5325674, at *4. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25071, at *29-30; *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad*, 2008 WL 5377783, at *4.

In assessing the fairness of a proposed settlement, the Court must look to the following factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *4; *Loudermilk Servs., Inc.*, No. 3:04-cv-966, 2009 WL 728518, at *8 (S.D.W. Va. Mar. 18, 2009). In determining the adequacy of the proposed settlement, the Court must consider: (1) relative strength of Plaintiff's case on the merits;

(2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the Parties' proposed Settlement Agreement merits final approval. Plaintiffs' Counsel and Defendant's Counsel are both experienced in complex litigation, including class action litigation. Counsel had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986). The Parties' settlement was indeed the product of vigorous, informed, arm's-length, and non-collusive negotiations, including a mediation session before a mediator experienced in the matters at issue in this action.

The settlement has no obvious deficiencies, and does not grant preferential treatment to the class representative or any segments of the class. All class members will be compensated using the same formula and will be able to recover a cash payment. The intrinsic value of the net settlement payment to Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation and the expense and delay that accompany the appeal process.

The settlement is particularly valuable to absent Class Members who, but for the settlement, likely would be unaware of the existence of their legal claims. Even if they were aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them would have little financial incentive to prosecute individual actions. The

alternative to bringing this case as a class action is bringing hundreds of individual claims. Realistically, the alternative to a class action under the present circumstances is no action at all.

"[C]ompromise and settlement are favored by the law." *Groves*, 2011 WL 4382708, at *4. The proposed settlement serves the overriding public interest in settling litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Muhammad*, 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, appointed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions. *See Muhammad*, 2008 WL 5377783, at *4 (recognizing that Plaintiff's counsel, Jonathan Marshall of the law firm Bailey & Glasser, LLP, and Steven Broadwater of the law firm of Hamilton, Burgess, Young and Pollard, PLLC, are "skilled and experienced in class action litigation, and have served as class counsel in several cases, including consumer lending cases").

**III.    The Requested Attorneys' Fees and Costs are Reasonable.**

Awarding attorney's fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common funds for the benefit of the class. The requested award of thirty-three percent (33%) of the common fund is reasonable under the circumstances of this case. It is noteworthy that no class member has objected to the fees and expenses sought by counsel.

**A.    The Percentage of Fund Method is the Appropriate Measure for Determining Fees**

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule" which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885). "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

"Although the Fourth Circuit has not determined the preferred method for calculating attorney fees where the common fund has been generated on behalf of a class, nearly all circuits, as well as district courts within this Circuit, that have considered the issue have found that the trial court may use the percentage method." *Dijkstra v. Carenbauer,* No. 5:11-cv-152, 2015 WL 12750449, at *6 (N.D. W. Va. July 29, 2015); *see also Good v. West Virginia-American Water Co.,* No. 14-1374, 2017 WL 2884535, at *20 (S.D. W. Va. July 6, 2017); *Archbold v. Wells Fargo Bank, N.A.,* No. 3:13-cv-24599, 2015 WL 4276295, at *3 (S.D. W. Va. July 14, 2015); *Kidrick v. ABC Television & Appliance Rental,* No. 3:97-cv-69, 1999 WL 1027050 *1 (N.D. W. Va. 1999)

("Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is now favored.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Goldenberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998); *In re Thirteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re Wash. Public Power Supply Sys. Litig.*, 19 F.3d at 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d. 474 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454, 456 (10th Cir.), *cert. denied*, 488 U.S. 822 (1988); *Camden I Condo. Ass'n*, 946 F.2d 768, 773-774 (11th Cir. 1991); *Bebchick v. Wash. Met. Area Transit Comm'n*, 805 F.2d 396, 406-7 (D.C. Cir. 1986). In fact, some circuits mandate use of the percentage of fund method. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n*, 946 F.2d at 774; *see generally* 1 Alba Conte, *Attorney Fee Awards* § 2.02 at 31 (2d ed. 1993); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force* (*"Task Force Report"*), 108 F.R.D. 237 (1985) (Prof. Arthur R. Miller, Reporter).

The percentage method "is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). Percentage-based attorney's fees:

      (1) align the interests of claimants and lawyers by rewarding superior performance and punishing failure;

      (2) minimize the need to evaluate the reasonableness of attorneys' efforts *ex post*, which is both time consuming and often hard to do; and

> (3) transfer the burden of financing lawsuits and other risks from claimants to attorneys who are better able to bear them.
>
> In keeping with the larger point of this Report, Judge Easterbrook also maintained that because claimants use contingent percentage fees almost exclusively, judges should use them when awarding fees in claimant representations.

*Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986); *see also Muhammad*, 2008 WL 5377783, at *7.

In its 1985 report, the Third Circuit Task Force recommended that in the traditional common fund situation, a district court "should attempt to establish a percentage fee arrangement." *Task Force Report,* 108 F.R.D. 237, 255 (1985); *see also Muhammad*, 2008 WL 5377783, at *7. Since that time, the Third Circuit has, on several occasions, "reaffirmed that application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corporate PRIDES Litig.,* 243 F.3d 722 (3d Cir. 2001) (collecting cases).

In sum, there is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery. This consensus derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees in such cases. *Muhammad*, 2008 WL 5377783, at *7.

**B.    The Percentage Requested by Class Counsel is Fully Supported by the Work Performed, Risks Taken, and Results Obtained**

Both state and federal courts in West Virginia recognize the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery. *Id.* As explained in *Eriksen Const. Co., Inc. v. Morey,* 923 F. Supp. 878, 881 (S.D. W. Va. 1996):

> The Court notes a one-third contingency fee is presumptively reasonable in West Virginia. *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73, 80 (1986). Nevertheless, a forty percent (40%) contingency fee is a common fee contract provision for cases that proceed to trial.

*Id.*; *see also F.S.&P. Coal Co. v. Inter-Mountain Coals, Inc.*, 179 W. Va. 190, 366 S.E.2d 638 (1988) (a one-third attorneys fee is the "going rate" in contingency fee cases). This authority supports the requested award in this case.

Some courts also consider certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. *Muhammad*, 2008 WL 5377783, at *8. These factors can include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Cendant*, 243 F.3d at 733 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)) (citations omitted); *see also Muhammad*, 2008 WL 5377783, at *8. The *Gunter* Court instructed that there is no specific formula for analyzing these factors. "Each case is different, and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

All of these considerations warrant an award of the requested fees in this case. The fund established for Class Members is substantial in light of the size of the class. Judging by the fact that no Class Member has opted out or objected to the proposed Settlement, the Class Members overwhelmingly support the settlement. Additionally, class counsel are skilled and experienced in class action litigation, and have served as class counsel in several cases.

The case involved complex issues related to Defendant's policies and application of state consumer protection law. Considering the possibility of appeals, resolution of the litigation could have taken years, and counsel bore a substantial risk of nonpayment. This Court or the Court of Appeals could have ruled for Defendant on class certification or the merits. The outcome of the case was hardly a foregone conclusion, but nonetheless class counsel accepted representation of

9

the Plaintiffs and the class on a contingent fee basis, fronting the costs of litigation. "In so doing, counsel have achieved a quite satisfactory settlement result." *Muhammad*, 2008 WL 5377783, at *8.

Finally, the one-third fee requested by counsel is very much in line with fee awards in similar common-fund cases. *Cox v. BB&T*, No. 5:17-cv-01982, 2019 WL 164814, at **5-6 (S.D. W. Va. Jan. 10, 2019) (awarding one-third of settlement in WVCCPA action); *Dijkstra*, 2015 WL 12750449, at *7 (same); *Archbold*, 2015 WL 4276295, at *6 (same); *Muhammad*, 2008 WL 5377783, at *8 (same); *Triplett v. Nationstar Mortgage, LLC*, No. 3:11-cv-238 (S.D. W. Va. 2012) (same); *Hackworth v. Telespectrum Worldwide, Inc.*, No. 3:04-cv-1271 (S.D. W. Va. 2004) (awarding fees of one-third amount of settlement in WARN Act class action settlement).

Accordingly, consideration of all of these factors overwhelmingly supports the requested award of thirty-three percent of the amount of the common fund established for the Class.

## IV.    The Requested Expenses are Reasonable

Consistent with the terms of the Agreement, the WVCCPA's fee-shifting provision entitles a consumer to recover "all or a portion of the costs of litigation" which includes not only "reasonable attorney fees" but "court costs and fees". W. Va. Code § 46A-5-104. West Virginia courts therefore award costs separately from attorney fees to prevailing plaintiffs in WVCCPA actions. *See Muhammad*, 2008 WL 5377783 at *9; *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 664 (W. Va. 2012) .

As set forth in the declaration of Jonathan Marshall, Class Counsel have incurred $1,722.38 in reasonable litigation expenses. The vast majority of these expenses were for professional mediation services. The other costs were incurred for filing fees, online research, and printing/copying.

**V.    The Proposed Service Award is Justified and Appropriate**

Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. *Archbold*, 2015 WL 4276295, at *6. Courts around the country have allowed such awards to named plaintiffs or class representatives. *Id.*, citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding $142,500 to class representatives out of $50 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund). One district court has gone so far as to say that incentive awards are "routinely approve[d]." *Id.*, citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. *Id.*, citing *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *25; *Varcallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005).

Class members would have received nothing had Plaintiffs not been willing to step up and file this action. Plaintiffs gave their time and effort to prosecute the case. They consulted with counsel regarding critical aspects of the settlement. They made themselves available to counsel whenever they were needed, and stood willing to do whatever tasks would be asked of them— including testifying at class certification proceedings, and at trial—as the case progressed. Accordingly, the proposed service award is justified and appropriate. *See Archbold*, 2015 WL 4276295, at *6.

## VI.    Conclusion

In accordance with the foregoing analysis, the Court **ORDERS** as follows:

(1) that pursuant to Fed. R. Civ. P. 23(e), final approval is granted in all respects of the terms and provisions of the Class Action Settlement Agreement ("Settlement Agreement"), which the Court preliminarily approved by Order entered on May 29, 2019;

(2) Plaintiffs and Class Representatives Curtis and Darlenna Franklin are awarded a shared service award of $5000 in recognition of their service to the class;

(3) Class Counsel are awarded their attorneys' fees from the settlement fund in the amount of $165,264.00, which represents 33 percent of the settlement fund;

(4) Class Counsel are awarded their litigation expenses from the settlement fund in the amount of $1,722.38;

(5) The Class Administrator is awarded his administrative costs and fees from the settlement fund;

(6) The class claims of the Plaintiffs and the class members in this action are dismissed with prejudice;

(7) The releases as set forth in Section 6 of the Settlement Agreement together with the definitions in paragraphs 1.1 through 1.26 relating thereto are expressly incorporated herein in all respects.;

(8) Upon the Effective Date, Plaintiffs and Settlement Class Members, are forever barred and enjoined from commencing, instituting or continuing to prosecute any action or any proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind (whether within the United States or not) asserting any of the Settled Claims against any of the Released Persons;

(9) Upon the Effective Date, Plaintiffs and Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Settled Claims against the Released Persons;

(10) Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Settled Claim, or of any wrongdoing or liability of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The Settlement Agreement may be filed in an action to enforce or interpret the terms of the Settlement Agreement, the Settlement contained therein, and any other documents executed in connection with the performance of the agreements embodied therein. Defendant and/or the other Released Persons may file the Settlement Agreement and/or this Judgment in any action that may be brought against it in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim; and

(11) The Court retains jurisdiction over this action for the purpose of interpretation and enforcement of the Class Action Settlement Agreement, including oversight of settlement administration and distribution of settlement funds.

Under Rule 54(b), there being no just reason for delay, the Court directs entry of a final judgment as to the matters determined by this Opinion and Order.

13

The Clerk is requested to forward a copy of this written Opinion and Order to all counsel of record.

Entered: **SEPTEMBER   24** , 2019

*David A. Faber*

The Honorable David A. Faber
United States District Judge